Thank you, Your Honor. Michael Satcher is on behalf of the appellant, Damon Cooke, who challenges the refusal of the Board to set a parole date for him on the basis that it lacks any supporting evidence and is otherwise arbitrary. Let me go immediately to what is the last refuge of the Board when all else fails, which is the nature of the commitment offense, which the Board found in this case showed that the petitioner would present a continuing and present unreasonable risk if released now. And that was basically on the basis that this attempted murder was a thoughtfully intentional killing that was … Premeditated. Premeditated. Well, that is by definition what makes this a life crime. I thought in California only the governor can grant parole. Well, it's … And the governor is not a party to this lawsuit. No, it's a little different for attempted murder than for murder. You're asking for parole. Asking that, yes. He'd be released on parole. That's right. And my question to you is this. In California, I thought that the only person or the only agency who could grant parole was the governor. No. The governor is not a party to this lawsuit. No. So how can we order the governor to grant parole? The governor only has the power to grant or deny parole or review parole. Nobody else has that power. He only has that power in the cases of murder. Under California law, it's only murder. It's only murder. It's only murder cases that he's able to basically veto. And the most he can do for a non-murder case is ask the board to, hey, rethink this case again. I see. Help me with this. My distinguished colleague to the right was the author of a decision called Irons. I'm sure you're familiar with it. Right. In that case, his, I'm sure, desire to be merciful and just, he felt the panel had little choice under the Biggs case, but to find that the nature of the offense, at least early on when the person first is eligible for parole, the nature of the offense could, in fact, be taken into account and did constitute, in quote, some evidence. How do you distinguish this case from that? Well, in a couple of ways. In that case, the facts used showed that it went beyond it was a heinous and atrocious and cruel murder case. We don't have the equivalent here because it's nothing beyond the fact of the premeditation. But counsel, here's a man who went back and waited for some time, about a $10,000 piece of jewelry involved, and because of his anger over $10,000, he shoots a man in the head, obviously thinking he's going to kill him. Right. Don't you think that is a pretty heinous thing to do? Yes, it's a heinous crime. And that's why it ends up being a life sentence where parole authorities must normally grant parole to the individual when he's considered for parole, unless in that individual case there's a finding that because of that crime, there's certain egregious, heinous, atrocious, and cruel aspects of that attempted murder, which show that he presently presents a risk. Even the California Supreme Court noted that the epitome or the paradigm of a due process violation when parole is denied on the basis of the offense is where the crime constituted no more than the basic elements of the offense. But counsel, are you not missing something in Irons?  I'm not missing anything in Irons. But clearly the basic elements of the offense cannot, over a long period of time, be the basis of keeping someone from getting parole. But your client is up for the first time, for the first time. This was a premeditated act, tried to kill somebody for $10,000. Under Irons and Biggs, isn't that an appropriate consideration for the parole board? Well, what's an appropriate consideration? It's not his first time, by the way. I mean, he took a parole denial act for his first hearing. Okay, second time. Yes. But I think what Irons does is draw, certainly draw a line where you have a crime that may arguably fit the heinous and atrocious regulations of the State that says, yes, after a while that can no longer constitute some evidence in the face of showing of longstanding rehabilitation. That while, that line that was marked is where the prisoner has served his minimum term, that 100 percent time. But that's not what Irons says. It's not what Biggs says. They had also served their minimum time. If you've got a bracket from the low end to the high end, and they come up for the early consideration for parole, and the offense is one that is of such a nature that the parole board legitimately is concerned about potential danger to society, don't Irons and Biggs say that that is an appropriate consideration for the parole board and that that can constitute, in quote, some evidence? For a time. For a time. It is a legitimate concern based on the offense. But Irons says that time is after or before the prisoner has served his minimum term. Neither Biggs nor Sass nor Irons had served that statutory 100 percent minimum term. In this case, that term was 11 years, 7 plus 4 for the use of a gun. Mr. Cook had served that term by the time he was seen back in 2002 by the parole board. So, and did they have any legitimate concern? No. This is a guy who's – it's a single act of criminal violence. He had no juvenile record. He had no prior criminal history. He had psych reports that were totally favorable. So your interpretation of Sass, Biggs and Irons is that when you get to the short bookend of the sentence given by the trial judge, that unless there's something that the parole board can point to other than the elements of the original crime, that person must be paroled. Is that what you're saying? That person must have a parole date set for him. And I believe that's what California law says. That's what the California law says. Well, what does our case law say? I don't read Irons, Biggs and Sass the way you do. I'm trying to understand why you say that that's an open sesame at that point once the person has reached the lower bookend. What Irons, Sass and Biggs are dealing with is this problem in California where it seems that no matter what you do or what factual showing you can make of your suitability for parole, the California parole board is just going to deny you parole. And when worse comes to worse, they do it on the basis of your commitment offense, because you do have a serious offense, which is why it's a life sentence. Are you planning on saving any time for rebuttal? I would like to reserve a minute for rebuttal, yes, Your Honor. But so you don't have much time. Right, right. There's just so many – okay. Let me go to the otherwise arbitrary then, because even put – let's put the – You've got a minute and a half as of now. Okay. Here this board gave all kinds of crazy reasons to deny the prisoner parole. Biggs says it's a careful weighing determination that needs to be done. So if you have a skewing of the weighing process, then you should reverse at least on the basis of these arbitrary findings that were made that skewed the process, that he needed a new vocation, even though he had four job offers out there, that he had this disciplinary in 95, even though that had been overturned on appeal, and the various other bogus reasons that the board weighed. You now have less than a minute. And I will reserve the rest of my time. Thank you. Good morning, and may it please the Court. I'm Jessica Blanion from the Attorney General's Office, representing Respondent. The district court's decision should be upheld for the following three reasons. The initial reason is that Cook received all the process that's due under the clearly established Federal law enumerated in Greenholt by the Supreme Court. Second, if the sum evidence standard applies, Cook failed to demonstrate that the State court decisions were contrary to the clearly established Federal law. And finally, we preserve our argument on the certificate of appealability. All right. Now, why is it you think there's sum evidence? Is it because of the nature of the offense? Your Honor, there were several reasons given. One is the nature of the offense. And an additional reason was his limited participation in self-help and therapy. And if you look at the record, his self-help participation really only occurred in the two years prior to the hearing, even though he'd been in for 11 years. There were also the rule violations. I thought there was a chrono or whatever it is by one of the officers that said he had taken all of the available self-help courses there were, and he'd even gone beyond that and gotten books on his own. He had taken some self-help and done chronos, but there were additional. All was available. Well, there's also additional time in the self-help programs. For example, he was participating in Alcoholics Anonymous and Narcotics Anonymous, which I'm sure, as you know, can be a lifelong process. And his two years' participation in that program was inadequate, the board found, to outweigh the negative factors that weighed against him. They did consider those positive factors, but they found they were outweighed by the negative factors. What negative factors? Well, the commitment offense, his disciplinary history. Well, they were wrong on the disciplinary history, weren't they? Well, there was some question about that. Well, there was no question. The record shows that the reversal on the – because they were wrong on the fact that he had something to do with narcotics. Well, Your Honor, and the parole board searched repeatedly through his central file looking for that document, and it was not in there. And if you look at the decision – If they were wrong on something so important, I mean, extreme importance in the prison. Correct. Trafficking in drugs. Correct. They were absolutely wrong. Why wouldn't their whole proceeding be in there? Well, Your Honor, the record at the time of the hearing did not demonstrate that they were absolutely wrong. They repeatedly looked through the inmate's central file. Well, they know now that they were wrong. Well, there is some dispute, and they actually, at the end of the hearing, asked for further investigation into the rule violation report in order to clear up any remaining discrepancies. And they did, didn't they? It's in the record. It says, It's institution improperly denied appellant's request for dismissal. The result of the investigation revealed that the form shall be – the charge shall be dismissed and all credits lost be restored. Your Honor, there is some question about that. Well, it's signed. It's signed, and it's in the record. Well, and it is. It's signed by a watch commander. And if you look at the record – And the watch commander didn't have the authority to do what he did? There was some question about whether or not he did. And if you look at the record at page 138, the board commissioner said they were confused over how a watch commander could overrule the director's level decision. Well, when he issued this decision and ordered that the lost credits be restored, what happened? Were they restored or weren't they restored? Did the prison appeal this? I am not aware. The problem is that record was not in his central file. Well, you know, the prison keeps saying the problems are, you know, that the report on his psychiatric report that he was given. Correct. Yes. All right. Hold on. That that was not an adequate report. But that was the prison's report. He didn't bring in a psychiatrist to do it. Well, Your Honor, I think there's two things to note. First, the prison and the board are separate entities. So to hold the board responsible for the prison's report – And to hold the inmate responsible for the prison's mistakes, and that's why he doesn't get parole, is that what you're saying, that that's the rule that if the prison does an inadequate job for the parole – potential parolee, he doesn't get parole? No, Your Honor. I'm not saying that's the rule. But I'm saying when the totality of the circumstances were considered, that he was found to be unsuitable by the board, and that the clearly established Federal But he was found to be unsuitable because, among the reasons you're giving, that he committed a violation which the prison watch commander, you know, reversed. And then you say that might not be the proper procedure. He had an inadequate report the prison gave him. And because he had an inadequate report, he ought to be denied parole. I find that an odd, odd reason to rely on. I can understand your reliance on some things, mainly the nature of the crime, which we can discuss. I don't understand reliance on the failures of the prison to do their work properly. Well, Your Honor, if you look at the discussion about the psychological report, there were several inaccuracies that the Petitioner himself brought up. And he said he was misquoted, he was misstated, and that the – he himself said the report was inaccurate. So the board chose not to rely on it. Isn't the reality, though, counsel, that other than the elements of the prior offense for which he was tried and committed, aren't these other five points – I guess there's some discussion whether it's five or six that the board cited, but whether it's five or six. Other than that one, aren't the rest of them pretty weak, maybe don't even qualify as, in quotes, some evidence? I don't see any teeth in any of those. The – should we not be focusing on the – based on Irons, Biggs, and Sass, the nature of this other offense? Because otherwise, I think you're on a – holding on to a very slim reed. Well, Your Honor, I think it's the totality of the circumstances. And this commitment offense is certainly the most important. But why don't we talk about what Judge Smith is asking you about, which is how this one so different that he should be denied parole? Well, I think some of the reasons were being pointed out initially. And they are the fact that he drove from Los Angeles to San Francisco planning to retrieve stolen property. And once he was in San Francisco, searched the victim's apartment, stayed with his cousin and friend, had a gun, discussed killing the victim. When the victim showed up at the apartment, he pulled the gun out and demanded that the victim go for a ride with him. And the victim said, if you're going to kill me, do it now. He then shot the victim in the head. The victim fell to the floor, pretending to be dead. And Mr. Cook cocked the gun again as if to shoot a second time, which he didn't do because he believed the victim was dead. And then he turned and fled. He dropped the gun, actually, and turned and fled the apartment. And later, his cousin went back to the apartment, not to render assistance or offer aid to Mr. Cook's friend, but to retrieve the gun, believing that his fingerprints were on it. How many first-degree murderers offer aid after they've shot the person? Well. I mean, the objective of a first-degree murderer is to kill the person. Generally, yes. I mean, he believed he was dead. So does that distinguish him from the ordinary run-of-the-mill first-degree murderer? Well, I believe it shows the callous nature of the crime. What? Thinking that you succeeded in shooting somebody? Thinking that you succeeded in shooting somebody and then preparing to shoot again after shooting them in the head. Well, I think that's the objective of a first-degree murderer, is to kill the person. Correct. I mean, if we were arguing whether this is first-degree murder, I could understand the argument that it was premeditated, as all first-degree murderers are, that he intended to kill the person, as all first-degree murderers do. The only thing about him is he was unsuccessful. The – but leaving somebody for dead, you think he's dead, even if you don't, but leaving him for dead seems to me is a normal course of a first-degree murderer. I guess that's a point where you and the Board would differ, Your Honor. But the Board thinks that the normal thing for a first-degree murderer is to leave somebody alive. I'm not – well, no, Your Honor, but that in some first-degree murders, you could offer assistance or it could be less callous. You call a doctor. If I may, Your Honor? Yeah. I also would like to point the Court's attention to the Kerry v. Muslad and recent Supreme Court decision where the Supreme Court held that a circuit court may not take a test applied to one area of the law and apply it to another area, which is what this Court has done, taking the prison disciplinary test of some evidence and applying it to parole consideration hearings. In fact, the only clearly established Federal law is that an inmate be given an opportunity to be heard and be informed in what respects he or she falls short of parole. Under Greenholds. Under Greenholds, correct. Which didn't consider the quantum of evidence. It discussed the procedures that should be afforded. That's correct. And in fact, Greenholds stated that the parole board need not specify what evidence they relied on in denying parole. But it didn't say that there can be a record that has no evidence. That's correct. All right. So there's no conflict with Greenholds. Well, the conflict is, Your Honor, applying the some evidence test which was created for prison disciplinary hearings to parole consideration hearings. Well, it was also, it was created for hearings where the, it said the objective was or the issue was whether he would spend a longer time in prison if he were denied the credits. Due to a guilt determination. And in Greenholds, they specify that parole consideration hearings did not involve a guilt determination. Okay. I don't, we've only got 35 seconds, so. She's actually on the negative there now. Oh, I'm on the negative. Do you want to say anything final? Just in closing, Your Honor, the board's decision and the superior court's decision complies with the clearly established Federal law. And accordingly, the district court's decision should be upheld. Thank you. Thank you. Well, I think the court's questions may have articulated better than me the point I was trying to make, which is that we have nothing more than the fact of an attempted premeditated murder in this case. Counsel is saying that this is worse because he drove from Los Angeles to San Francisco and because he waited in the apartment for him, and then he planned this to shoot him in retaliation for theft. That's what distinguishes it from the ordinary first-degree murder. Well, I think counsel was actually saying a lot of this was to confront, to make a claim of right. I'm entitled to get this necklace back that's worth $10,000. And that's what the confrontation is about. And, yes, there was some thought apparently given to murder, and that's why you have a finding of premeditated murder in this case. But the very fact that you don't render assistance to the person, like Your Honor was saying, that you're attempting to kill and has feigned death and think is dead, how does that show a basis now that the prisoner presents an unreasonable risk, when the whole design of the parole law is to start with a grievous offense and determine whether there's been reform and rehabilitation and change? And this defendant has shown that reform and rehabilitation. But isn't the standard we're looking at here, counsel, whether the parole board had some evidence that this inmate might be, still be a risk to society? And under our case law, are they not entitled to consider whether the motivation was so callous that it bears on that issue? In this case, $10,000 versus a human life, basically. Isn't that an appropriate consideration, whether you agree with it or not? Isn't that some evidence upon which the parole board was entitled to rely? I don't think so, because any attempted murder is going to have some motive that in it. I agree. Again, I agree with that. But isn't that still something on which the parole board is entitled to rely under Ironsass and Biggs? Not after the prisoner has served his minimum term of confinement and has otherwise demonstrated change and rehabilitation. I think Biggs, that's where Biggs drew the line. And then the answer then is, well, how far can you go? Can you just go forever on the basis of the offense? No, there's got to be a line somewhere. At some point. And the line. I don't want to say where it is. Well, Biggs, I mean, Irons has a pretty good job of laying out the line. What is that line? After service of the minimum term, where you have done, he got 11 years to life in prison. He had served 11 years by that time. So after a while, after that while, you cannot just rely on the offense when everything else about the prison. Are you saying that anyone who serves his minimum term is entitled to parole? No. I thought that's exactly what you were saying. No. You're entitled to parole unless the board can point to something beyond that offense to show that you still present a danger. Well, or unless the offense is a particularly egregious offense. Right. Don't you really think that's what this comes down to in this case? Is this premeditated murder more egregious than the ordinary premeditated murder? Attempted premeditated murder. Right. It's the same thing whether he had died or not. Right. Is it more egregious to kill somebody over a $10,000 necklace, I don't know, than the ordinary motive for an attempted murder or a successful murder. Right. And there's nothing that's heinous, atrocious, especially heinous and atrocious and cruel about this particular attempted murder. It fits well within the mainstream of this kind of life offense. Is that the test or is it the crime itself? No. See, that we compare attempted murders. Is that our job sitting here? We evaluate attempted murders, whether or not they are heinous. Yes. It has to be an especially. Why wouldn't they all be heinous and depraved? Well, that's the problem. That's why it has to be an especially heinous, atrocious and cruel attempted murder, because all life offenses have a certain level of heinousness, atrociousness and cruelty. Every attempted murder, every premeditated attempted murder is grave. But California law has provided for parole for those prisoners who show that they would not present an unreasonable risk if released. That's not the test. Excuse me? That's not the sole test. That's the standard. That's the regulatory language, that the prisoner is entitled to parole unless the board determines that he would present an unreasonable risk to public safety if released. And here, nothing about the individual shows that he would present an unreasonable  This business about hadn't done enough programming. Yeah. All right. Let me ask you one thing. Parole applies only to first and second degree murder? Is that the system with the parole board, is it only for murders? No. There are certain other offenses. What are the other offenses? For example, attempted murder with a 7-year minimum. Kidnapping for robbery or ransom is a 7 to life. There are certain offenses that set a minimum term up to life. Train wrecking. The California court has said that in the normal case, parole is appropriate? Yes. The legislature has said that normally the board shall grant a parole date to the individual and shall make an exception in an individual case where it would present an unreasonable risk. And the California courts have been clear about what's happening is the board is making the statutory exception the rule. It's arbitrarily disregarding the parole statute. And these words, the curse is heinous, are they in a regulation? They're in the regulatory language that's supposed to guide the board in determining where do we have that exceptional case. We have that exceptional case. One basis to find an exceptional case is where that life offense is especially heinous, atrocious, and cruel when compared to other like life offenses. All right. Thank you, counsel. Case disargued will be submitted.
judges: Ferguson, Reinhardt, M. Smith